## Hall v. Commonwealth.

(Decided Oct. 9, 1936.)

JOE HALL and D. I. DAY for appellant.

B. M. VINCENT, Attorney General, and J. J. LEARY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

At the July, 1935, term of the Letcher circuit court, Morg and Bill Hall were jointly indicted and accused of the offense denounced by section 1166, Kentucky Statutes (as amended by Acts 1934, c. 47), of having maliciously shot and wounded with intent to kill Sink Meade.

Upon trial thereon, Bill Hall was acquitted in obedience to a directed verdict granted him, and Morg Hall was by the jury found guilty as charged and his punishment fixed at two years confinement in the penitentiary. Complaining of this verdict and judgment thereon, he has appealed.

It is disclosed by the record that this shooting and wounding, for which appellant was here prosecuted, may be considered as the culmination of a long period of strained and hostile relations between Sink Meade and the appellant Morg Hall, and kinsmen, Bill Hall, Clifton Hall, and others of the Hall clan.

Such condition of long-continuing bad feeling between Meade and the Halls is shown by the uncontradicted evidence of the Meades, given in narrative form and depicting numerous prior clashes and hostile skirmishes and militant demonstrations between them, extending as far back as some eight or nine years before the occurrence of the shooting here involved, and commencing upon an occasion when the Meades were visiting at the home of Manuel Meade, when a number of the Halls, including the appellant, surrounded and shot into the house at them.

Further, the Meades testify that a later boisterous and hostile demonstration was made by the appellant and others of the Hall clan against them along about the second Christmas before this last shooting here in evidence, when it appears that Morg Hall and Clifton Hall, with several others of their crowd, rode up and down the road in front of Meade's home, cursing and waving

their pistols as they abused and threatened him and his family, and yet other like instances, manifesting the Halls' continuing animosity towards them, are recounted in their evidence. Also Sink Meade testifies that so strong has been their hostility to him that for years he has avoided even the risk taken in his passing by their homes, lest they would fire upon him.

Further, it is shown that, soon following the last one of these repeated feudal displays of the Halls' enmity, early in the afternoon of the same day upon which occurred the later shooting and wounding of Sink Meade by the appellant Morg Hall, Sink Meade shot and wounded the appellant's uncle, Clifton Hall, as he was returning from work on a neighboring farm and passing through Meade's place.

This shooting by Meade of Clifton Hall, it was testified, was at once communicated by Jonas Meade, who saw it, to his kinsmen, the appellant Morg Hall and Bill Hall, who went at once to Clifton Hall's home, told his family of it, and then armed themselves with a gun and pistol, and, accompanied by Cliff's wife, eleven year old son, and a younger child, started up the road to find their father and kinsman Cliff Hall and learn if he had been killed.

The road along which they went in looking for him led them between Sink Meade's house on the one side, and his barn on the other, where, as the Halls passed by the barn, an interchange of pistol and rifle shots ensued, wherein Sink Meade was shot and wounded by the appellant, Morg Hall.

According to the account given by the Meades, as commonwealth witnesses, of this shooting affray, the Halls, including the appellant Morg Hall, were coming down the road on an avenging mission, not looking for Clifton Hall, but hunting for Sink Meade, who testifies that he was at the time they came sitting in the shed of his barn, with his back to the road, and didn't know of their approach until warned by his wife; that his wife and daughter were at the time with him, doing chores, preparatory to his leaving home because of their apprehension of his having further difficulty with the Halls, sought by way of reprisal for his having that afternoon shot their kinsman Clifton Hall. He states that his wife first saw the Halls as they came down the road towards

the barn, looking for him, and that, when they were near enough to see him through the open end of the barn, the appellant, Morg Hall, drew his pistol, aimed and fired two shots at him; that seeing this, his wife called and warned him, when Meade grabbed his gun and stepped out of the shed, where he exchanged two shots with appellant, who continued firing at him from the road until one of his shots took effect in Meade's shoulder blade, when, being thereby disabled for further conflict, he hurriedly retreated back into the barn.

All of the prosecuting witnesses testify that Bill Hall, who was present, passed by the barn without firing.

This version of the encounter given by Meade is fully corroborated in practically all particulars by the testimony of his wife and daughter, eyewitnesses to it.

On the other hand, the evidence for the defense, as given by the appellant and his witnesses, is to the effect that upon being informed that Clifton Hall, his uncle, had been shot by Meade, when passing near Meade's home, he at once with Bill Hall went to Clifton's home, telling his wife and family of Meade's having shot Clifton, when they armed themselves and all started out to find him; that as they were all going down the road, looking for the wounded Hall, and were passing Meade's barn, he rushed out with a highpowered gun and opened fire upon them, barely missing some of the party. They state that Meade fired the first shots at them, when the appellant, Morg Hall, then drew his pistol and began firing "shot for shot" with Meade.

Upon the conclusion of the evidence and instructions given thereon, upon submission of the case to the jury, it returned a verdict finding the accused, Morg Hall, guilty as charged. The appellant seeks a reversal of the judgment entered upon that verdict.

Of the several assignments of error set out in appellant's motion and grounds for a new trial, his counsel has seen fit to here only argue and insist upon two of them, which are: (1) That the verdict of the jury is not supported by the evidence; and (2) that the court erred in the admission of incompetent evidence.

Disposing of the first of these objections, it is sufficient to say that appellant does not contend that the commonwealth's evidence was not sufficient to support

the verdict but criticizes the jury's finding of it as erroneous, for the reason, he insists, that the jury should have believed the witnesses for the defense rather than those who testified for the commonwealth, as they gave a more reasonable account, or plausible theory, of the shooting than did the commonwealth witnesses, and which strongly tended to show that Meade, rather than the appellant, was the first to shoot upon this occasion and that Hall, when he shot Meade, was merely firing back at Meade in self-defense.

This argument here made, as to the set of witnesses counsel for appellant feels gave the more credible and persuasive testimony, was doubtless made and forcefully urged by counsel for appellant upon the jury, but it has seen fit not to accept the testimony of appellant's witnesses but to believe that of the commonwealth witnesses as to what were the circumstances under which this shooting occurred and who of the parties fired the first shot at the other.

The determination of such questions of fact rests peculiarly and exclusively within the province of the jury, and where the situation is, as here, one presenting only a conflict in the evidence, we are not authorized to disturb its finding. Patterson v. Commonwealth, 256 Ky. 745, 77 S. W. (2d) 14; Webb v. Commonwealth, 257 Ky. 547, 78 S. W. (2d) 770; Little v. Commonwealth, 242 Ky. 247, 46 S. W. (2d) 97; Mullins v. Commonwealth, 258 Ky. 529, 80 S. W. (2d) 606.

Appellant's second objection is that the court erred in the admission of incompetent evidence, which is directed to the testimony of Meade's wife, who, when giving her account in narrative form of this shooting and the difficulties and clashes between the families which led up to it, said:

"Morg was outside with his pistol, like that, and I was running through the door, begging to him and trying to get them not to kill us, and if it hadn't been for Manuel Meade's wife, they would have killed both of us I guess there in the house."

To this added statement of the witness that, "if it hadn't been for Manual Meade's wife, they would have killed both of us [her and her husband, Sink Meade]," the defendant objected, which objection the court sus-

tained, at once admonishing the jury that they were not to consider it, adding:

"The fact these people had previous trouble, the evidence tending to show that is only competent for the purpose of enabling the jury, if it enables the jury, to better understand the frame of mind these parties were in and what took place at the time of the shooting of Sink Meade [for which the appellant was then under prosecution.]"

We deem the given admonition as proper and effective for avoiding prejudice to the defendant. Bess v. Commonwealth, 116 Ky. 927, 77 S. W. 349, 25 Ky. Law Rep. 1091; Fletcher v. Commonwealth, 83 S. W. 588, 26 Ky. Law Rep. 1157.

Other instances of like character which occurred were immediately followed by the admonition of the court not to consider the objectionable detail of the narrative, and that the only purpose for which he allowed evidence as to prior difficulties to be admitted at all was to enable the jury to understand these parties' frame of mind.

Further, counsel for appellant mentioned, without arguing, that the court erred in overruling appellant's motion for a continuance, based upon the affidavits of certain witnesses.

However, those affidavits, all to the effect that the absent witnesses named would state that they had heard Sink Meade, prior to this shooting, make threats against the Halls, were cumulative upon such point. Four of these witnesses, who it is claimed would so testify and because of whose absence a continuance was asked, were later present at the trial and testified, putting fully before the jury their testimony as to Meade's previous threats, even though their evidence fell far short of supporting appellant's contention as to what their evidence would establish.

The matter of a continuance, under such circumstances, being one within the discretion of the court, and here a majority of the witnesses for which the continuance was asked having in fact testified, clearly the appellant cannot be regarded as prejudiced by the court's refusal to grant a continuance.

In fact, a reading of the record clearly convinces us that upon the whole case no error prejudicial to the substantial rights of appellant has occurred, and, for such reason, the judgment is affirmed.